UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | * * * |
| Plaintiff, | * * |
| v. | * * |
| | * Civil Action No. 1:16-cv-10960-ADB |
| CHRISTOPHER R. ESPOSITO, ANNTHONY JAY PIGNATELLO, JAMES GONDOLFE, RENEE GALIZIO, LIONSHARE VENTURES LLC, and CANNABIZ MOBILE, INC. | * * * * * * |
| Defendants. | * * |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

### I. INTRODUCTION

In May 2016, Plaintiff Securities and Exchange Commission (the "SEC" or the "Commission") filed this civil enforcement action against two corporate entities and four individuals, including James Gondolfe ("Gondolfe") and Cannabiz Mobile, Inc. ("Cannabiz"). [ECF No. 1 (hereinafter the "Complaint")]. The case arises out of allegations that the defendants schemed to offer or sell securities without registration or exemption in violation of federal securities laws and regulations. Currently before the Court is the SEC's Motion for a Default Judgment against Gondolfe and Cannabiz [ECF No. 39], which is supported by a Memorandum of Law [ECF No. 40] and the Declarations of David H. London ("London Dec.") [ECF No. 40-1] and Mark Albers ("Albers Dec.") [ECF No. 40-2].

On June 3, 2016, the SEC served process on Gondolfe. [ECF No. 10]. Gondolfe, as

Cannabiz's CEO, agreed to accept service on Cannabiz's behalf by email on June 7, 2016. [ECF No. 7]. Neither Gondolfe nor Cannabiz filed an answer or motion within the required time period, which prompted this Court to order Gondolfe and Cannabiz to show cause as to why the Court should not instruct the Clerk to enter a default against them. [ECF No. 18]. They failed to respond to this Court's Show Cause Order. Accordingly, the Court directed the Clerk to enter a default against Gondolfe and Cannabiz on August 2, 2016. [ECF No. 35].

For the reasons set forth in this Memorandum and Order, the SEC's Motion for Default Judgment against James Gondolfe and Cannabiz [ECF No. 39] is <u>GRANTED IN PART</u>.

**II.    LEGAL STANDARD**

As set forth in Fed. R. Civ. P. 55(b), "a plaintiff 'must apply to the court for a default judgment' where the amount of damages claimed is not a sum certain." <u>Vazquez-Baldonado v. Domenech</u>, 792 F. Supp. 2d 218, 221 (D.P.R. 2011) (quoting Fed. R. Civ. P. 55(b)). As to the defendants' liability, the entry of default "constitutes an admission of all facts well-pleaded in the complaint" <u>Id.</u> (internal quotations and citations omitted). Because Gondolfe and Cannabiz have defaulted in this case, they are "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability." <u>In re The Home Restaurants, Inc.</u>, 285 F.3d 111, 114 (1st Cir. 2002) (quoting <u>Franco v. Selective Ins. Co.</u>, 184 F.3d 4, 9 n.3 (1st Cir. 1999)). On a motion for a default judgment, however, it is appropriate to independently "examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." <u>Ramos-Falcon v. Autoridad de Energia Electrica</u>, 301 F.3d 1, 2 (1st Cir. 2002). Allegations that support a viable cause of action will establish the defendants' liability. <u>See</u> Fed. R. Civ. P. 55(b).

With regard to damages, Fed. R. Civ. P. 55(b)(2) provides that the court "may conduct

hearings or make referrals . . . when, to enter or effectuate judgment, it needs to (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." A hearing, however, is not necessarily required, particularly where the pleadings and the moving party's affidavits establish the amount of the default judgment. See In re The Home Restaurants, Inc., 285 F.3d at 114 (holding that district court did not abuse its discretion by entering default judgment without first holding evidentiary hearing, where there was "no uncertainty about the amounts at issue," the pleadings contained "specific dollar figures," and the court requested and received affidavits in support of the default judgment).

### III. DISCUSSION

The SEC argues that the facts alleged in its Complaint establish that the defaulting defendants violated federal securities laws by selling and offering to sell unregistered securities in interstate commerce. The SEC further argues that these facts entitle it to a permanent injunction against Gondolfe and Cannabiz enjoining their further violation of federal securities laws and regulations, disgorgement of their ill-gotten gains with prejudgment interest, civil monetary penalties against Gondolfe and Cannabiz, and an order barring Gondolfe from serving as an officer or director of a public company and from participating in penny stock offerings. In this Memorandum and Order, the Court will address whether the Complaint adequately supports liability before turning to the SEC's requests for remedies.

#### A. SUMMARY OF RELEVANT FACTS

The salient facts alleged in the Complaint are summarized below. The Court accepts the well-pleaded facts as true for purposes of this Memorandum and Order. See Conetta v. Nat'l Hair Care Ctrs., Inc., 236 F.3d 67, 76 (1st Cir. 2001) (noting that the "entry of default prevents

the defendant from disputing the truth of well-pleaded facts in the complaint pertaining to liability.").

> i. Relevant Defendants

Cannabiz is a corporation purportedly based in Cambridge, MA, but in reality operated out of office space it shares with co-defendant Lionshare Ventures LLC ("Lionshare"), a privately held corporation with its principal place of business in Danvers, MA. Compl. ¶¶ 14 – 15; London Dec., Ex. A, at 34. Cannabiz initially claimed to be in the business of mineral exploration in Brazil, and, later, the business of servicing the medical marijuana industry. Id. ¶ 15. Before adopting its current name of Cannabiz, it operated as ReBuilder Medical Technologies, Inc. from March 2007 to August 2012 and as Lion Gold Brazil, Inc. from August 2012 to May 2014. Id. Cannabiz's stock is not registered with the SEC, and it has not registered any securities offerings with the SEC. Id. Since at least March 2007, however, Cannabiz (and its predecessors) has been quoted and publicly traded on the Over-the-Counter (OTC) securities markets ("OTC Markets"). Id.

On April 3, 2014, Lionshare's Managing Director Christopher R. Esposito ("Esposito"), despite having no official position with Cannabiz, id. ¶¶ 10, 26, installed Gondolfe as Cannabiz's President, Chief Executive Officer (CEO), Chairman, and sole Director. Id. ¶¶ 12, 39. Before then, Gondolfe had been working odd jobs and at a Boston nightclub. London Dec., Ex. A, at 27.

> ii. Allegations

The following factual allegations are again taken from the SEC's Complaint, the well-pleaded portions of which are taken to be true by virtue of the entry of default against Gondolfe and Cannabiz. See In re The Home Restaurants, 285 F.3d at 114.

The SEC alleges that, beginning in late May 2012, Esposito used approximately $75,000

of Lionshare investors' money to purchase five convertible promissory notes collectively amounting to $711,238, which represented all of the outstanding debt obligations of Cannabiz (then known as ReBuilder). Compl. ¶ 23. The notes gave Esposito (through Lionshare) effective control over Cannabiz because they were convertible at any time into 711,238,000 shares of Cannabiz's common stock (almost 18 times the amount of outstanding shares). Id. ¶ 24.

Even though Esposito had no official position with Cannabiz, he secretly controlled and funded it. Id. ¶ 26; London Dec., Ex. A, at 56, 74 – 76, 172, 174; Ex. B ("Chris [Esposito] is among the largest debt holders of [Cannabiz] and can sink [it] at any time, as we have no access to capital and are asking Chris to fund the company."). By virtue of their control over Cannabiz, Esposito and Lionshare were "affiliates" of the company. See 17 C.F.R. § 230.144(a)(1) (defining a company's "affiliate" as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with" the company).

Esposito, however, concealed his affiliate status in order to profit from prohibited transactions, such as inducing Cannabiz's transfer agent to issue to Esposito and others millions of Cannabiz common shares without a restrictive legend. Compl. ¶¶ 27, 28; London Dec., Ex. A, at 199–200. Without a restrictive legend, these shares could be sold into the public market despite Esposito and Cannabiz's having failed to comply with the applicable laws regulating sales of shares owned or controlled by affiliates. By hiding his affiliate status and inducing the issuance of unlegended common shares, Esposito contravened an SEC rule prohibiting sales of securities received from an affiliate prior to the completion of a one-year holding period. 17 C.F.R. § 230.144(d)(1)(ii).

Moreover, Esposito provided the transfer agent various fraudulent and misleading documents stating that Lionshare was not an affiliate of Cannabiz (by August 2012, Cannabiz

was known not as ReBuilder, but as Lion Gold) and that the to-be-issued ReBuilder common shares were "free trading common stock" unburdened by "restrictive legend or transfer restrictions." Compl. ¶ 29. On July 27, 2012, based on Esposito's misrepresentations about his and Lionshare's affiliate status, the transfer agent issued 47 stock certificates without restrictive legends, representing 18,236,000 shares of ReBuilder common stock, at least 3,675,000 of which went to Esposito personally. Id. ¶ 31.

On or around October 8, 2012, Esposito directed the transfer agent to issue additional stock certificates without restrictive legends in order to transfer 3.3 million of his personal shares to various investor relations "consultants" as payment for their blasts of promotional emails to potential investors. Id. ¶ 32. The consultants sold 2,396,000 of their shares to the public, gaining a profit of $62,835; Esposito personally sold 94,500 shares to the public, gaining $1,950. Id. ¶ 33. All of this occurred before the expiration of the one-year holding period. Id.; 17 C.F.R. § 230.144(d)(1)(ii).

On November 16, 2012 and January 8, 2013, Esposito caused Cannabiz (then known as Lion Gold) to submit to OTC Markets information statements for public disclosure that falsely represented that Lion Mineracao was Lion Gold's wholly-owned operating subsidiary. In reality, Esposito owned 99.99% of Lion Mineracao while Cannabiz had no ownership stake in Lion Mineracao. Id. ¶¶ 35, 37. The information statements also failed to disclose (i) Esposito and Lionshare's control over Cannabiz through the convertible promissory notes and (ii) the dilution of shareholder equity that would result if Esposito and Lionshare converted this debt into common stock. Id. ¶ 36. These misrepresentations and omissions left Cannabiz's investors unaware of Esposito's control over Cannabiz, ownership of all its purported mineral assets, and ability—at any time—to dilute significantly existing shareholders' ownership interest in

Cannabiz by converting debt into equity. Id.

On or about April 3, 2014, Esposito installed Gondolfe as Cannabiz's President, CEO, Chairman, and sole director. Id. ¶ 39; London Dec., Ex. A, at 31, 132, 168–69. At this time, Cannabiz was still known as Lion Gold. Gondolfe acted solely at Esposito's direction; for example, he unquestioningly signed false and misleading Cannabiz documents that Esposito and others placed in front of him. Compl. ¶ 39; London Dec., Ex. A, at 59, 111–12, 121–22, 127–28, 135–40, 152–53, 157–60, 165–68, 171, 177–81, 188–90, 213–14. Esposito used documents bearing Gondolfe's signature to induce Lion Gold's transfer agent to issue millions of unlegended shares, which facilitated the sale of those unregistered shares to the public. Compl. ¶¶ 48, 50. Gondolfe ultimately received $101,320 in ill-gotten gains for his role in concealing from investors, regulators, and the transfer agent Esposito's actual control of the company. Albers Dec. ¶ 7; London Dec., Ex. A, at 28–31.

In June 2014, Cannabiz (then known as Lion Gold) issued a press release announcing that its name had changed to Cannabiz and that it had altered its business purpose from mining minerals in Brazil to mobile media and marketing focused on the medical marijuana industry. Compl. ¶ 44. In August 2014, in order to create more convertible debt to sell for a profit, Esposito caused Cannabiz to issue three additional convertible notes to Lionshare. Id. ¶¶ 45–46. He backdated these notes to appear as though they had been issued in 2012, thereby concealing from investors and financial intermediaries that the securities in question had not satisfied Rule 144's one-year holding period for securities held by an issuer's affiliates. Id.; 17 C.F.R. § 230.144(d)(1)(ii). Gondolfe, again following Esposito's direction, signed all three backdated notes, which were then submitted to OTC Markets for publication. Id. ¶ 46; London Dec., Ex. A, at 158–60.

Esposito and Cannabiz then provided documents containing misrepresentations and false statements to Cannabiz's transfer agent in order to induce the transfer agent to convert the three backdated notes into more than 8.1 million shares of Cannabiz stock certificates without restrictive legends, thereby facilitating the unregistered sales of these securities into the public market. Compl. ¶¶ 47–48. These documents included Cannabiz Board of Directors resolutions, signed by Gondolfe, which falsely represented that the notes had been created in 2012 and that Lionshare was not an affiliate of Cannabiz. Id. ¶ 48. Gondolfe and Cannabiz knew, or were reckless in not knowing, that the documents Gondolfe had signed contained false statements because (1) Gondolfe was not even employed by Cannabiz in 2012 (the date that appears on the backdated notes he had signed) and (2) Esposito and Lionshare controlled Cannabiz (and were therefore its affiliates). Id. ¶ 49. As a result, Cannabiz's transfer agent issued more stock certificates without restrictive legends, thereby facilitating the sale of Cannabiz shares to the public markets notwithstanding the defendants' misrepresentation and concealment of such shares' Rule 144 restrictions based on Esposito and Lionshare's undisclosed affiliate status. Id. ¶¶ 50–52.

Esposito then arranged for a stock promotion company to send out at least 13 email blasts touting Cannabiz's stock to potential investors on October 28 and 29, 2014. These blasts were designed to increase Cannabiz's stock price and trading volume. Id. ¶¶ 53–54. The blasts successfully raised Cannabiz's stock price and trading volume, allowing Esposito and other defendants to sell their Cannabiz shares to the public market for a profit in violation of Rule 144's prohibitions on such sales by affiliates. Id. ¶¶ 55–59; 17 C.F.R. § 230.144(d)(1)(ii). Esposito and Lionshare also sold some of Cannabiz's convertible debt to two purchasers for a total of over $303,000. Id. ¶¶ 60–62. Based on Esposito's misrepresentations regarding his and

8

Lionshare's affiliate status, the two purchasers later converted the debt and sold hundreds of millions of Cannabiz shares into the public market between October 2014 and May 2015, again in violation of Rule 144's restrictions. Id. ¶ 63; 17 C.F.R. § 230.144(d)(1)(ii).

### B. Discussion of Liability

#### i. Liability under Section 5 of the Securities Act

The Complaint's Fifth Claim for Relief alleges that Gondolfe and Cannabiz violated Sections 5(a) and 5(c) of the Securities Act. 15 U.S.C. § 77e(a), (c). Section 5(a) makes it unlawful for anyone to sell, directly or indirectly, securities through the use of any means or instruments of interstate commerce without an effective registration statement. 15 U.S.C. § 77e(a). Section 5(c) similarly prohibits offers to buy or sell securities unless a registration statement has been filed. 15 U.S.C. § 77e(c).

A *prima facie* case for a violation of Sections 5(a) and 5(c) requires a showing that: (1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly offered to sell or sold the securities; and (3) the offer or sale was made in connection with the use of interstate transportation, communication, or the mails. See Sec. & Exch. Comm'n v. Spence & Green Chem. Co., 612 F.2d 896, 901–02 (5th Cir. 1980).

After reviewing the facts alleged in the Complaint, the Court finds that they sufficiently support the claims alleged in the SEC's Fifth Claim for Relief. First, the Complaint alleges that Gondolfe and Cannabiz engaged in the sale or offering of "securities," as that term is defined in the Securities Act and the Exchange Act. 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10). Compl. ¶ 77. The Complaint also alleges that Gondolfe and Cannabiz personally engaged in these unregistered sales and offerings of securities, in violation of Section 5(a) and 5(c) of the Securities Act. Id. ¶ 78. As Cannabiz's President, CEO, Chairman, and sole director, Gondolfe

signed false and misleading Cannabiz documents that were then used to issue millions of unlegended shares that were then sold to the public. Id. ¶¶ 38–39, 48–50. Gondolfe ultimately received $101,320 for his role in concealing from investors, regulators, and the transfer agent Esposito's actual control of Cannabiz. Albers Dec. ¶7; London Dec., Ex. A, at 28–31. Finally, the Complaint adequately alleges that these sales and offerings were made in connection with the use of interstate transportation, communication, or the mails. Thus, the SEC has made a *prima facie* showing that Gondolfe and Cannabiz violated Sections 5(a) and 5(c) of the Securities Act.

Once the SEC pleads a *prima facie* violation of Section 5, the defendant bears the burden of proving that the securities or the transactions qualified for an exemption from registration. See Sec. & Exch. Comm'n v. Ralston Purina, 346 U.S. 119, 126 (1953). Because the defendants here have defaulted, they have not rebutted the SEC's *prima facie* showing. Therefore, the SEC has sufficiently demonstrated the defendants' Section 5 liability.

ii. Gondolfe and Cannabiz's liability under Section 17(a)(2) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b–5

Section 77q(a) of the Securities Act prohibits, in the offer or sale of securities: (1) devices, schemes, or artifices to defraud; (2) obtaining money or property by means of materially false or misleading statements or omissions; and (3) transactions, practices, or courses of business that operate as a fraud or deceit. 15 U.S.C. § 77q(a). Section 10(b) of the Exchange Act and Rule 10b–5 thereunder prohibit any person, in connection with the purchase or sale of any security, from, directly or indirectly: (1) employing any device, scheme or artifice to defraud; (2) making any untrue statement of material fact or omitting to state a material fact necessary in order to make the statements made not misleading; or (3) engaging in any transaction, practice, or course of business that operates or would operate as a fraud or deceit upon any person. 15

U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5; see also Sec. & Exch. Comm'n v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (quoting Rule 10b–5). In a civil enforcement action brought by the SEC itself, the SEC need not prove any investor's actual reliance on the misrepresentations. See Tambone, 597 F.3d at 447 n.9. Lastly, violations of Sections 17(a)(1) and 10(b) and Rule 10b–5 require proof of scienter, but claims based on Sections 17(a)(2) and 17(a)(3) do not. See Aaron v. Sec. & Exch. Comm'n, 446 U.S. 680, 701–02 (1980) ("the Commission is required to establish scienter as an element of a civil enforcement action to enjoin violations of § 17(a)(1) of the 1933 Act, § 10(b) of the 1934 Act, and Rule 10b–5 . . . [but] need not establish scienter as an element of an action to enjoin violations of § 17(a)(2) and § 17(a)(3) of the 1933 Act.").

Section 10(b) and Rule 10b-5(b) thereunder prohibit "mak[ing] any untrue statement of a material fact in connection with the purchase or sale of securities." Janus Cap. Grp. v. First Derivative Traders, 564 U.S. 135, 141 (2011) (quoting Rule 10b-5). The Complaint alleges that Gondolfe and Cannabiz "made" misrepresentations and omissions by signing fabricated SEC filings and other false corporate documents and backdating convertible notes in a scheme to induce Cannabiz's transfer agent to issue millions of Cannabiz's common shares without a restrictive legend. See Compl. ¶¶ 46–48. Without such a legend, these shares were sold into the public market despite Cannabiz's failure to comply with SEC Rule 144's one-year holding period applicable to shares owned or controlled by an affiliate. Id. ¶¶ 30, 46–48; see 17 C.F.R. § 230.144(d)(1)(ii).

The SEC also sufficiently alleges that Gondolfe and Cannabiz acted with the scienter required for § 17(a)(1) and § 10(b) liability (but not required for §17 (a)(2) or § 17(a)(3) liability). See Aaron, 446 U.S. at 701–02. Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). It may be

11

proven by indirect evidence and may include extreme recklessness. See In re Cabletron Sys., Inc., 331 F.3d 11, 38 (1st Cir. 2002). Recklessness involves "an extreme departure from the standards of ordinary care [that] presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious the actor must have been aware of it." Greebel v. FTP Software, Inc., 194 F.3d 185, 198 (1st Cir. 1999) (internal citation omitted).

Here, the Complaint alleges that Gondolfe acted at Esposito's direction by knowingly or recklessly signing numerous backdated and other fraudulent Cannabiz corporate documents and regulatory filings as part of the fraudulent scheme to conceal Esposito's ownership and control of Cannabiz. Compl. ¶¶ 46–49. Gondolfe knew, or was reckless in not knowing, that he was signing false documents backdated to 2012 because he knew that (1) Esposito installed him as CEO in April 2014 and he had never been associated with the company in 2012 and (2) Esposito, not Gondolfe, actually controlled the company. Id. ¶ 49; see Sec. & Exch. Comm'n v. Garber, 959 F. Supp. 2d 374, 380 (S.D.N.Y. 2013). Lastly, Gondolfe's and Esposito's scienter can be imputed to Cannabiz. See SEC v. Manor Nursing, 458 F.2d 1082, 1096 n.17 (2d Cir. 1972) (an individual's "knowledge is imputed to the corporations which he controlled").

Furthermore, the SEC has adequately alleged that these misstatements were "material" because they influenced Cannabiz's transfer agent to issue stock certifications without the restriction that would have prohibited their sale prior to the expiration of the Rule 144 one-year holding period. Compl. ¶ 30. Consequently, hundreds of millions of Cannabiz shares were sold to the investing public despite legal prohibitions on their sales. Id. ¶ 63; see Joyce v. Joyce Beverages, Inc., 571 F.2d 703, 707 (2d Cir. 1978) ("statement about the potential availability of Rule 144 could have misled the reasonable shareholder into thinking that [Rule 144] was, in fact, available to him").

The misstatements and omissions that violated § 10(b) and Rule 10b-5, moreover, support a violation of § 17(a)(2): Cannabiz obtained $11,255 in ill-gotten gains and Gondolfe obtained $101,320 by means of these misstatements and omissions. See, e.g., Tambone, 597 F.3d at 449 ("defendant may be held primarily liable for misstatements appearing in reports authored by outside analysts when those misrepresentations are based on information provided by defendant"); Albers Dec. ¶¶ 7–8.

Thus, the SEC has adequately established Gondolfe's and Cannabiz's liability under § 17(a)(2), § 10b, and Rule 10b-5(b).

      iii. Gondolfe and Cannabiz's liability under § 17(a)(1), (a)(3) of the Securities Act, § 10(b) of the Exchange Act, and Rule 10b–5(a), (c)

The SEC next alleges that Gondolfe and Cannabiz employed schemes that violated § 17(a)(1) and § 17(a)(3) of the Securities Act and § 10(b) of the Exchange Act and Rule 10b-5(a), (c) thereunder. As stated above, the SEC has adequately alleged that Gondolfe and Cannabiz acted with scienter, an element required by § 17(a)(1) and § 10(b).

Scheme liability arises where the defendants employ a deceptive device for the purpose of defrauding investors. See Sec. & Exch. Comm'n v. Durgarian, 477 F. Supp. 2d 342, 351–52 (D. Mass 2007), aff'd, Sec. & Exch. Comm'n v. Papa, 555 F.3d 31 (1st Cir. 2009). Here, Gondolfe and Cannabiz were vital participants in Esposito's scheme to create the deceptive appearance that Cannabiz securities were not subject to trading restrictions. They directly or indirectly fabricated backdated convertible notes, signed false corporate documents, and submitted them as part of a scheme to induce the transfer agent to issue hundreds of millions of Cannabiz shares ultimately sold to the investing public despite legal prohibitions on their sale. Compl. ¶¶ 45–48, 63.

Because the SEC's Complaint adequately alleges that Gondolfe and Cannabiz had

13

engaged in a scheme to defraud with scienter, the Court finds that the SEC has properly shown

Gondolfe and Cannabiz's liability under § 17(a)(1), § 17(a)(3), and Rule 10b-5(a), (c).

**IV.  RELIEF**

    **C.  Disgorgement**

In light of the defendants' default, the SEC has requested that the Court enter an Order of Disgorgement and Prejudgment Interest [ECF No. 39]. In a case involving violations of the federal securities laws, the Court has "broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." Sec. & Exch. Comm'n v. Druffner, 802 F. Supp. 2d 293, 297 (D. Mass. 2011) (quoting Sec. & Exch. Comm'n v. First Jersey Sec., Inc., 101 F.3d 1450, 1474–75 (2d Cir. 1996)). The amount of disgorgement "need only be a reasonable approximation of profits causally connected to the violation," and the "risk of uncertainty in calculating disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty." Sec. & Exch. Comm'n v. Happ, 392 F.3d 12, 31 (1st Cir. 2004) (internal quotations and citation omitted).

After reviewing the Declaration of Mark Albers, the SEC's forensic accountant, the Court finds that the disgorgement amounts requested by the SEC reasonably approximate profits causally connected to the illegal conduct alleged in the Complaint. In order to estimate the appropriate disgorgement figure in this case, Albers reviewed bank records and other documents produced to the SEC, and concluded that Cannabiz received $11,255 and Gondolfe $101,320 in ill-gotten gains. Albers Dec. ¶¶ 7–8. He then calculated that, based on those figures and the interest rate used by the Internal Revenue Service (IRS) in charging interest on tax underpayments, Cannabiz incurred a prejudgment interest of $439 and Gondolfe $5,361. Id. ¶¶ 10–11. The Court finds no error in Mr. Albers's calculations, which represent a reasonable

14

approximation of profits causally connected to the defendants' violations.

Prejudgment interest on disgorged profits is also appropriate in order to prevent "defendants from enjoying an interest-free loan on their illicitly-obtained gains." Sec. & Exch. Comm'n v. Levine, 517 F. Supp. 2d 121, 141 (D.D.C. 2007) (citing Sec. & Exch. Comm'n v. Kenton Cap., Ltd., 69 F. Supp. 2d 1, 16–17 (D.D.C. 1998). The SEC's proposal to use the IRS's interest rate on tax underpayments is appropriate because it reasonably approximates the unjust benefit of the use of ill-gotten money. See First Jersey, 101 F.3d at 1475–76.

Therefore, the Court will order Cannabiz to disgorge a total of $11,694 (its ill-gotten gains plus prejudgment interest) and Gondolfe to disgorge a total of $106,681 (same).

### D. Civil Penalties

The SEC further argues that the Court should impose civil penalties upon the defaulting defendants pursuant to § 20(d)(2) of the Securities Act, 15 U.S.C. § 77t(d)(2), and § 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(i). Compl. at 20. Those statutes authorize the Court to determine the amount of the penalty "in light of the facts and circumstances." 15 U.S.C. §§ 78u(d)(3)(B)(i), 77t(d)(2)(A); see Sec. & Exch. Comm'n v. Kern, 425 F.3d 143, 153 (2d Cir. 2005) ("The tier determines the maximum penalty, with the actual amount of the penalty left up to the discretion of the district court."). "Both statutes provide three tiers of penalties, the amount increasing with the severity of the violation." Sec. & Exch. Comm'n v. Manterfield, No. CIV A 07-10712-RGS, 2009 WL 935953, at *1 (D. Mass. Apr. 8, 2009). The "Tier I penalties are generally applicable . . . . Tier II penalties require 'fraud, deceit, manipulation, or a deliberate or reckless disregard of a regulatory requirement,' . . . and Tier III penalties require the Tier II elements plus 'substantial losses or . . . significant risk of substantial losses to other persons.'" Kern, 425 F.3d at 153 (quoting 15 U.S.C. § 77t(d)(2)) (internal citations omitted).

"Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." Sec. & Exch. Comm'n v. Monterosso, 756 F.3d 1326, 1338 (11th Cir. 2014) (citing Sec. & Exch. Comm'n v. Sargent, 329 F.3d 34, 41 n.2 (1st Cir. 2003)). In determining the appropriate fine, courts have considered factors including the egregiousness of the violation, the defendant's willingness or failure to admit wrongdoing; the isolated or repeated nature of the violations, the degree of scienter involved, the defendant's cooperation or lack thereof with authorities, and the defendant's current financial condition. See, e.g., Sec. & Exch. Comm'n v. Converge Glob., Inc., No. 04-80841CV, 2006 WL 907567, at *6 (S.D. Fla. Mar. 10, 2006); Sec. & Exch. Comm'n v. Cavanagh, No. 98-1818DLC, 2004 WL 1594818, at *31 (S.D.N.Y. July 16, 2004).

Here, the SEC requests that the Court impose a Tier III (third-tier) penalty of $178,156 against Gondolfe and $890,780 against Cannabiz, ECF No. 39 at 1–2, each of which is the maximum third-tier penalty permitted for civil penalties imposed after August 1, 2016. See 17 C.F.R. Part 201, Subpt. E, Tbl. I; 2016 WL 3519790 (June 27, 2016) (increasing maximum Tier-III penalty to account for inflation adjustments). All of the conduct giving rise to liability for the defendants in this case occurred before May 2015.

The Court finds that, based on the allegations in the SEC's Complaint, third-tier penalties against Cannabis and Gondolfe are warranted. They were instrumental in an illicit scheme to evade the securities laws' registration requirements. They acted with scienter in signing false corporate documents solely to induce Cannabiz's transfer agent to issue millions of shares of Cannabiz stock without a restrictive legend, which facilitated the unregistered entry of these securities into the public market. Cannabiz and Gondolfe's actions caused investors to suffer substantial losses when the Cannabiz shares they had bought became worthless after the

16

conversion of Cannabiz debt and the dumping of millions of Cannabiz shares onto the public markets. Private investors who purchased Cannabiz's convertible debt also sustained losses. In addition, Cannabiz and Gondolfe have not accepted responsibility for their actions—they defaulted, failing to appear before this Court to defend or explain their conduct.

The Court, however, will apply the third-tier penalty amounts effective for the period covering the violative conduct, rather than the newest penalty amounts adjusted for inflation. See 17 C.F.R. Part 201, Subpart E, Tbl. I; 2016 WL 3519790 (June 27, 2016). The SEC notes that its newest inflation adjustment to the penalty amounts, "unlike prior inflation adjustments, applies to all penalties imposed on or after that date, including penalties imposed for violations occurring before the effective date." [ECF No. 40 at 17 n.7]. The Court, however, is concerned with a possible constitutional problem. There is a presumption against retroactive legislation. Landgraf v. USI Film Prod., 511 U.S. 244, 265 (1994). "[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." Id. at 244 (quoting Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988)).

The Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (the "2015 Act") amended the prior acts governing the inflation adjustment regime to make inflation adjustments retroactive and, therefore, applicable to penalties for violations that predated the current inflation adjustment rate. See Pub. L. 114-74 Sec. 701, 129 Stat. 584 (Nov. 2, 2015), to be codified at 28 U.S.C. § 2461 note Sec. 6. The 2015 Act, making inflation adjustments to penalties retroactive, was enacted on November 2, 2015. It states clearly that the inflation adjustment rates should have retroactive effect with respect to *the date of that inflation rate adjustment*, but is silent on retroactivity with respect to violations that predate the *2015 Act itself*. The Court agrees that as long as the violative conduct occurred after November 2, 2015,

17

inflation-adjusted penalties have retroactive effect, but the Court is not persuaded that the retroactive effect extends past November 2, 2015. The Court notes that different federal agencies have taken different positions on this question.[1]

When the Court raised its concern at the October 18, 2016 hearing and stated that it was inclined to use the prior inflation adjustment rates to avoid the constitutional problem, the SEC indicated that it would not argue the point with the Court. Prior to this most recent increase, the third-tier penalty amount for violations occurring after March 5, 2013, the applicable time period for the conduct charged, was $775,000 for an entity and $160,000 for an individual. See 17 C.F.R. § 201.1001 and Table I. In light of the uncertainty regarding the precise scope of the 2015 Act's retroactive mandate, which implicates constitutional concerns, the Court applies the third-tier penalty amounts from the period covering the conduct at issue in this case.

Accordingly, the Court imposes third-tier civil penalties of $160,000 on Gondolfe and $775,000 on Cannabiz. See 17 C.F.R. § 201.1001 and Table I.

### E. Permanent Injunction

The SEC has also requested that the Court enter a permanent injunction enjoining Gondolfe and Cannabiz from committing further violations of the federal securities laws. See 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d)(1). "An injunction is appropriate if the Court determines there is a reasonable likelihood that the defendant will violate the laws again in the future." Sec. & Exch. Comm'n v. Druffner, 517 F. Supp. 2d 502, 513 (D. Mass 2007) (citation omitted). To determine whether the defendant is reasonably likely to violate the laws again in the future, the

---

[1] *Compare* 12 C.F.R. § 1083.1 (2017) (Under the Consumer Financial Protection Bureau rule, the "adjustments . . . shall apply to civil penalties assessed after January 15, 2017, regardless of when the violation for which the penalty is assessed occurred") *with* 28 C.F.R. § 85.3 (2016) (Under the Department of Justice rule, the adjustments apply to penalties "assessed after August 1, 2016, whose associated violations occurred after November 2, 2015").

Court looks to "whether a defendant's violation was isolated or part of a pattern, whether the violation was flagrant and deliberate or merely technical in nature, and whether the defendant's business will present opportunities to violate the law in the future." Id. (quoting Sec. & Exch. Comm'n v. Bilzerian, 29 F.3d 689, 695 (D.C. Cir. 1994)). In light of the allegations in the Complaint, which describe an elaborate and deliberate scheme to defraud investors, the Court finds that a permanent injunction enjoining Gondolfe and Cannabiz from committing further violations of the federal securities law is warranted.

### F. Director/Officer Bar Against Gondolfe

The SEC next requests that this Court bar Gondolfe from serving as a public company's officer or director. Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act authorize a court in an SEC enforcement action to bar or suspend a defendant from serving as an officer or director of a public company, "conditionally or unconditionally, and permanently or for such period of time as [the Court] . . . shall determine." 15 U.S.C. § 77t(e); 15 U.S.C. § 78u(d)(2). Pursuant to that statutory authority, the Court has substantial discretion to determine whether a defendant is unfit to serve as a public company's officer or director. See Sec. & Exch. Comm'n v. Selden, 632 F. Supp. 2d 91, 97 (D. Mass. 2009) (citing Sec. & Exch. Comm'n v. Patel, 61 F.3d 137, 141 (2d Cir. 1995).

The facts alleged in the SEC's Complaint demonstrate Gondolfe's lack of fitness to serve as a public company's officer or director. Gondolfe willingly, repeatedly, and unquestioningly signed falsified and backdated corporate documents at Esposito's command. He enabled Esposito's scheme to defraud investors and colluded with him in illicitly selling millions of Cannabiz shares to the public market. Therefore, the Court deems it appropriate to permanently bar Gondolfe from serving as a public company's officer or director. See Sec. & Exch. Comm'n

v. Spencer Pharm., 2015 WL 5749436, at *8 (D. Mass. Sept. 30, 2015) (imposing officer/director bar on defendant who had engaged in a manipulation scheme using false corporate information).

### G. Penny Stock Bar Against Gondolfe

Lastly, the SEC requests a similar order barring Gondolfe from participating in penny stock offerings. Section 20(g)(1) of the Securities Act and Section 21(d)(6)(A) of the Exchange Act give the Court discretion to bar a defendant from offering or selling penny stocks. 15 U.S.C. § 77t(g)(1); 15 U.S.C. § 78u(d)(6)(A). Such a bar may be "conditional[ ] or unconditional[ ], and permanent[ ] or for such period of time as the court shall determine." Spencer, 2015 WL 5749436, at *8 (quoting 15 U.S.C. §§ 77t(g)(1), 78u(d)(6)(A)). Here, Cannabiz's stock traded as a penny stock as defined in Section 3(a)(51) of the Exchange Act and Rule 3a51-1 thereunder. 15 U.S.C. § 78c(a)(51); 17 C.F.R. §240.3a51-1. For many of the same reasons that justify the director/officer bar against Gondolfe, the Court deems a permanent penny stock bar against Gondolfe appropriate and in the public interest.

### V. CONCLUSION

For the foregoing reasons, the SEC's Motion for Default Judgment against Gondolfe and Cannabiz [ECF No. 39] is GRANTED IN PART.

**SO ORDERED.**

Dated: January 27, 2017

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
UNITED STATES DISTRICT JUDGE