UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER ESPOSITO,<br>ANTHONY JAY PIGNATELLO,<br>JAMES GONDOLFE,<br>RENEE GALIZIO,<br>LIONSHARE VENTURES LLC, and<br>CANNABIZ MOBILE, INC.,<br><br>Defendants. | Civil Action No. 1:16-cv-10960-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

The Securities and Exchange Commission ("SEC") filed this civil enforcement action against two corporate entities and four individuals, alleging that they schemed to offer or sell securities without registration or exemption in violation of federal securities laws and regulations. [ECF No. 1] ("Complaint"). The Court has entered default judgments against both of the corporate entities and one of the individuals, see [ECF Nos. 63, 64, 91], leaving three individual defendants, including Renee Galizio.[1] Pending before the Court is the SEC's motion to strike the majority of the affirmative defenses asserted in Galizio's amended answer to the Complaint. [ECF No. 83]. For the following reasons, the SEC's motion is DENIED.

**I.     BACKGROUND**

A detailed description of the alleged fraudulent scheme at the heart of the Complaint is

---

[1] Individual defendant Christopher Esposito has also been defaulted under Fed. R. Civ. P. 55(a), and a motion for default judgment as to Esposito is pending. [ECF Nos. 112, 115].

set forth in the Court's prior memoranda. See [ECF Nos. 62, 90]. Galizio, however, is not accused of being a central player in that scheme, and only one of the five claims in the Complaint is asserted against her. See Compl. ¶¶ 64–79. Specifically, she is accused of purchasing one million shares of restricted stock for $5,000 between August and September 2014, id. ¶ 50, and then selling those shares in October 2014 for $73,009. Id. ¶ 57. According to the SEC, Galizio's sale violated Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, because it occurred during the pendency of the one-year holding period that SEC Rule 144 imposes on such shares. See Compl. ¶¶ 75–9; [ECF No. 84 at 2].

On March 15, 2017, with leave of the Court, Galizio filed an amended answer to the Complaint. [ECF No. 81]. Her amended answer limns sixteen affirmative defenses, twelve of which the SEC moves to strike, in whole or in part, pursuant to Fed. R. Civ. P. 12(f). The challenged affirmative defenses come in three flavors: (1) that Galizio acted at all times in good faith, in reasonable reliance upon the advice of others, or lacked a culpable state of mind; (2) that the allegations, conduct complained of in the Complaint, and the resulting harm were caused by persons over whom Galizio had no control; and (3) that Galizio's conduct was isolated or inadvertent.

## II.    LEGAL STANDARD

The Court has "broad discretion" to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); SEC v. Durgarian, 477 F. Supp. 2d 342, 360 (D. Mass. 2007), aff'd sub nom. SEC v. Papa, 555 F.3d 31 (1st Cir. 2009). Nevertheless, Rule 12(f) motions "are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion," Boreri v. Fiat S.p.A., 763 F.2d 17, 23 (1st Cir. 1985), as striking is generally considered a "drastic remedy." Manning v. Boston Med.

Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013) (quoting 5C Charles Alan Wright, et. al., Federal Practice & Procedure § 1380 (3d ed. 2011)). "In assessing whether a motion to strike should be granted, the Court must bear in mind that such motions are rarely granted absent a showing of prejudice to the moving party." Lexington Luminance LLC v. TCL Multimedia Tech. Holdings, Ltd., No. 16–11458, 2017 WL 3795769, at *1 (D. Mass. Aug. 30, 2017); see 5C Charles Alan Wright, et. al., Federal Practice & Procedure § 1382 (3d ed. 2017) ("[A] motion to strike frequently has been denied when the court believes that no prejudice could result from the challenged allegations, even though the offending matter literally is within one or more of the categories set forth in Rule 12(f).").

### III. DISCUSSION

The SEC seeks to strike Galizio's affirmative defenses because they are immaterial to her liability under the relevant federal securities laws. Galizio is accused of violating Section 5 of the Securities Act of 1933, which makes it unlawful for anyone to sell, directly or indirectly, securities by using any means or instruments of interstate commerce without an effective registration statement, or to offer to buy or sell securities unless a registration statement has been filed. Compl. ¶¶ 75–79; 15 U.S.C. § 77e(a), (c). As the Court explained in two prior decisions in this case, see [ECF Nos. 62, 90], a prima facie case for a violation of Section 5 requires a showing that: (1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly offered to sell or sold the securities; and (3) the offer or sale was made in connection with the use of interstate transportation, communication, or the mails. See SEC v. Spence & Green Chem. Co., 612 F.2d 896, 901–02 (5th Cir. 1980). If a prima facie case is established, the burden shifts to the defendant to demonstrate his entitlement to an exemption from Section 5. Id. at 902.

With that framework in mind, the Court addresses each group of affirmative defenses challenged by the SEC.

**A.  Galizio Acted in Good Faith or in Reasonable Reliance, and Lacked a Culpable Mental State (Fifth and Seventh through Thirteenth Affirmative Defenses)**

The SEC maintains that, because the elements of a Section 5 violation do not require any showing as to the defendant's mental state, Section 5 articulates a strict liability offense. As a result, Galizio's defenses pertaining to her good faith or reasonable reliance on the advice of others are immaterial to the issue of liability and should be stricken. Galizio argues that the First Circuit has yet to decide what, if any, mental state is required for a Section 5 violation and that this unsettled state of the law precludes striking her affirmative defenses.

Although the SEC does not identify any case in which the First Circuit explicitly describes Section 5 as a "strict liability" offense, and the Court has located none, the case law is nonetheless fairly clear on this point. Decisions by district courts in this Circuit—including by this Court in this case—have described Section 5 liability without imposing a mental state requirement, thus implying that it is a strict liability offense. See SEC v. Esposito, No. 16−10960, 2017 WL 1398318, at *5 (D. Mass. Apr. 14, 2017); SEC v. Esposito, No. 16−10960, 2017 WL 388800, at *4 (D. Mass. Jan. 27, 2017); SEC v. Tropikgadget FZE, 146 F. Supp. 3d 270, 280 (D. Mass. 2015); SEC v. Smith, No. 14−192, 2015 WL 4067095, at *9 (D.N.H. July 2, 2015) ("Section 5 imposes no scienter requirement."). The lack of a required mental state "is in accord with the majority of circuit courts that have considered the question." SEC v. CMKM Diamonds, Inc., 729 F.3d 1248, 1256–57 (9th Cir. 2013) (collecting cases from Fifth, Seventh, and Eleventh Circuits). Galizio relies only upon cases from the D.C. Circuit, none of which impose a scienter requirement for Section 5 liability but merely note that the D.C. Circuit has not

4

definitively decided the question. See, e.g., SEC v. E-Smart Techs., Inc., 74 F. Supp. 3d 306, 324 (D.D.C. 2014) (citing Zacharias v. SEC, 569 F.3d 458, 466 (D.C. Cir. 2009)).

Because the case law does not require proof of the defendant's mental state for Section 5 liability, Galizio's affirmative defenses claiming good faith, reasonable reliance, or lack of an otherwise culpable mental state are immaterial to the issue of her liability. That being said, however, the SEC has failed to demonstrate any prejudice that would necessitate striking these affirmative defenses. Accordingly, the Court will not strike them, but Galizio should understand that the Court will not instruct on these defenses and that proof of them will not obviate liability.

### B. The Allegations, Injuries, and Damages Asserted in the Complaint Were Caused by a Third Party Over Whom Galizio Had No Control (Sixth Affirmative Defense)

Galizio's sixth affirmative defense argues that the SEC's claims are barred "because all the allegations in the Complaint, and all injuries and damages, if any, resulting therefrom, were caused by the acts or omissions of a third party or parties over whom Galizio had no control." [ECF No. 81 at 12]. The precise contours of this defense are unclear. The SEC argues that the defense is immaterial because the Complaint does not seek redress for injuries or damages, and the SEC need not prove causation or damages in order to prove Section 5 liability. Galizio offers no specific argument to support the defense, but contends generally that striking her affirmative defenses risks unfairly punishing her as a victim of fraud.

As discussed supra, the SEC is correct that it need not show causation or damages in order to prove Section 5 liability and it will therefore not be required to do so. Because the SEC again fails to adequately allege prejudice, however, the Court will also not strike this defense. Further, this defense may be relevant to the extent that it claims that someone other than Galizio, who was not acting at her behest, is responsible for the alleged conduct and harm, and Galizio

will be allowed to present evidence to such effect.

### C. Galizio's Actions Were Isolated, Inadvertent, and Undertaken Without a Culpable Mental State (Second, Fifteenth, and Sixteenth Affirmative Defenses)

The SEC argues that the number of violations and the mental state with which they were undertaken are irrelevant to liability, and that these defenses should therefore also be stricken. Galizio's second, fifteenth, and sixteenth affirmative defenses, however, do not pertain to liability per se but to the SEC's requested remedies against her, which include enjoining future Section 5 violations, imposing a penny stock bar, civil penalties, and the disgorgement of ill-gotten profits. The parties agree, correctly, that both the number of violations and Galizio's mental state are relevant to determining the appropriate remedies, even for a non-scienter violation. See [ECF No. 84 at 7 & n.4; ECF No. 89 at 2 n.2]; see also SEC v. Spencer Pharm., 2015 WL 5749436, at *6–9 (D. Mass. Sept. 30, 2015) (imposing penny stock bar, disgorgement, and other remedies when company founder "orchestrated a complex and long-lasting fraud" and engaged in an "egregious pattern of behavior"); SEC v. Converge Glob., Inc., No. 04−80841, 2006 WL 907567, at *6 (S.D. Fla. Mar. 10, 2006) (noting that courts have considered, when imposing fines, "egregiousness of the violation, the isolated or repeated nature of the violations, [and] the degree of scienter involved"); SEC v. Lybrand, 281 F. Supp. 2d 726, 730 (S.D.N.Y. 2003), aff'd sub nom. SEC v. Kern, 425 F.3d 143 (2d Cir. 2005) (listing similar factors). If the SEC proves that Galizio is liable, issues surrounding the number of her violations and her mental state are virtually certain to arise. Therefore, because the SEC has not and cannot plausibly argue that it will suffer prejudice, the Court will not strike Galizio's second, fifteenth, and sixteenth affirmative defenses.

## IV. CONCLUSION

As described herein, the SEC's motion [ECF No. 83] is <u>DENIED</u>.

**SO ORDERED.**

Dated: November 21, 2017

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
UNITED STATES DISTRICT JUDGE